ADAMS OUTDOOR ADVERTISING, INC
v CANTON CHARTER TOWNSHIP

Docket No. 256791. Submitted January 5, 2006, at Detroit. Decided
January 10, 2006, at 9:00 a.m.

Adams Outdoor Advertising, Inc., brought an action to quiet title in
the Wayne Circuit Court against Canton Charter Township, alleg-
ing ownership by adverse possession of property previously con-
veyed to the township on which the plaintiff maintained bill-
boards. In the alternative, the plaintiff claimed a prescriptive
easement. The township moved for summary disposition, arguing
that the plaintiff's claims were barred under MCL 600.5821(2).
The plaintiff filed a cross-motion for summary disposition, arguing
that no genuine issue of material fact existed regarding its
acquisition of title to the property. The court, Michael J. Callahan,
J., granted the township's motion and denied the plaintiff's
cross-motion. The plaintiff appealed.

    The Court of Appeals *held*:

    The circuit court did not err by granting the township sum-
mary disposition. MCL 600.5821(2) provides that actions by mu-
nicipal corporations to recover possession of "any public highway,
street, alley, or any other public ground" are not subject to any
period of limitations. Thus, the statute precludes a party from
claiming adverse possession against a municipal corporation. The
term "public ground" is not defined in the statute, and is suscep-
tible to different meanings. Applying a reasonable construction
that best accomplishes the statute's purposes in light of the
legislative history and other uses of the term, however, "public
ground" is a broadly construed term the Legislature used to refer
to publicly owned property open to the public for common use. The
Legislature intended the term to be inclusive. Given this intent,
the statute's protection logically covers an area so obviously open
and accessible to the public as the property at issue in this case.

    Affirmed.

ADVERSE POSSESSION — MUNICIPAL CORPORATIONS — PUBLIC PROPERTY.

    An action by a municipal corporation for recovery of the possession
of any public highway, street, alley, or any other public ground is

not subject to any period of limitations; the phrase "public ground" in this context refers to publicly owned property open and accessible to the public for common use and is not limited to public rights-of-way (MCL 600.5821[2]).

*Reach, Ranney & Carpenter, P.C.* (by *Walter B. Ranney*), for the plaintiff.

*Hemming, Polaczyk, Cronin, Smith & Witthoff, P.C.* (by *Kevin L. Bennett*), for the defendant.

Before: DONOFRIO, P.J., and BORRELLO and DAVIS, JJ.

DONOFRIO, P.J. Plaintiff appeals as of right an order granting summary disposition in favor of defendant in this action to quiet title. Because the trial court did not err in determining that the property in the instant case is "public ground" within the meaning of MCL 600.5821(2) and did not err in granting defendant summary disposition on the basis that plaintiff cannot bring an adverse possession claim against defendant under MCL 600.5821(2), we affirm.

I

Plaintiff's predecessor in interest, Central Advertising, erected two billboards in 1959 on property "located on the north side of Michigan Avenue (US-12) approximately 500 feet east of Canton Center Road" (the property). Central Advertising paid rent to the owner of the property, Thomas Greco, until 1978. At an unspecified time, the Michigan Department of Natural Resources (DNR) acquired the property. In 1982, the DNR conveyed the property to defendant. In 1983, plaintiff acquired the assets of Central Advertising, including the billboards on the property. Between 1983 and 2000, plaintiff maintained its billboards on the property without permission from defendant and never

paid rent for the right to maintain the billboards. Since 2001, the Michigan Department of Transportation (MDOT) has insisted that plaintiff obtain permits under the Highway Advertising Act, MCL 252.301 *et seq.*, for its billboards on the property and required plaintiff to obtain permission from the owner of the property as a condition for issuance of the permits. In June 2001, plaintiff and defendant signed a lease for a term of one year to satisfy the MDOT's requirement. Subsequently, by letter dated September 20, 2002, defendant asked plaintiff to remove the billboards on the property by October 19, 2002.

Thereafter, plaintiff filed a complaint against defendant claiming it obtained ownership of the property by adverse possession under the 15-year period of limitations for recovery of property, MCL 600.5801(4), or, in the alternative, that it obtained a prescriptive easement to access, maintain, and use its billboards on the property. In response, defendant asserted as an affirmative defense that an adverse possession claim brought against a municipality is barred as a matter of law under MCL 600.5821(2). Defendant then filed a motion for summary disposition pursuant to MCR 2.116(C)(7) and (C)(8), arguing that plaintiff's claims were barred under MCL 600.5821(2), which provides that municipal corporations are exempt from the 15-year period of limitations for recovery of "any public highway, street, alley, or any other public ground . . . ." Plaintiff filed a cross-motion for summary disposition under MCR 2.116(C)(10), arguing that no genuine issue of material fact existed regarding the fact that plaintiff acquired title to the property by adverse possession.

Finding the reasoning of an unpublished decision of this Court, *Cascade Charter Twp v Adams Outdoor*

*Advertising,* unpublished opinion per curiam of the Court of Appeals, issued March 9, 2004 (Docket No. 240625),[1] persuasive, the trial court granted defendant's motion for summary disposition and denied plaintiff's cross-motion for summary disposition. It is from this order that plaintiff now appeals.

II

Plaintiff argues that the trial court erred in granting defendant summary disposition because the property in question is not "public ground" within the meaning of MCL 600.5821(2) and, thus, not immune from plaintiff's adverse possession claim under MCL 600.5821(2). We review de novo decisions on motions for summary disposition. *Roberts v Mecosta Co Gen Hosp (After Remand),* 470 Mich 679, 685; 684 NW2d 711 (2004). Defendant's motion for summary disposition was premised on MCR 2.116(C)(7), barring claims because of immunity granted by law, and MCR 2.116(C)(8), providing for dismissal where the party opposing the motion has failed to state a claim on which relief may be granted. Apparently, the trial court granted defendant's motion for summary disposition pursuant to both MCR 2.116(C)(7) and MCR 2.116(C)(8).

In evaluating whether summary disposition should have been granted under MCR 2.116(C)(7), this Court "consider[s] all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." MCR 2.116(G)(5); *Fane v Detroit Library Comm,* 465 Mich 68, 74; 631 NW2d 678 (2001). A

---

[1] The *Cascade* panel of this Court consisted of Judge SMOLENSKI, Judge SAWYER, and Judge BORRELLO.

motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. MCR 2.116(G)(5); *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). A motion attacking the pleadings should only be granted if no factual development could possibly justify recovery, and the defendant is entitled to judgment as a matter of law. *Id.* at 130.

Plaintiff's cross-motion for summary disposition was premised on MCR 2.116(C)(10). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). When deciding a motion for summary disposition under subrule C(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Id.* A motion for summary disposition pursuant to MCR 2.116(C)(10) may be granted when the affidavits or other proofs provided show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Morales v Auto-Owners Ins Co,* 458 Mich 288, 294; 582 NW2d 776 (1998). Review is limited solely to the evidence that was presented to the trial court at the time the motion was decided. *Peña v Ingham Co Rd Comm,* 255 Mich App 299, 313 n 4; 660 NW2d 351 (2003). Also, statutory interpretation is a question of law that is considered de novo on appeal. *Roberts, supra* at 685.

Generally, the limitations period for the recovery of possession of land is 15 years. MCL 600.5801(4); *Gorte v Dep't of Transportation*, 202 Mich App 161, 165; 507 NW2d 797 (1993). However, MCL 600.5821(2) provides:

> Actions brought by any municipal corporations for the recovery of the possession of *any public highway, street, alley, or any other public ground* are not subject to the periods of limitations. [Emphasis added.]

It is undisputed that defendant is a municipal corporation. MCL 42.1(2) provides, "The charter township shall be a municipal corporation . . . ." It is also undisputed that MCL 600.5821(2) precludes a party from claiming adverse possession against a municipal corporation. The sole issue before us is whether the disputed property falls within the scope of "public ground" immune from adverse possession claims under MCL 600.5821(2).

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004). The best source for determining legislative intent is the specific language of the statute. *Id.* The Legislature is presumed to have intended the meaning it plainly expressed. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). Terms that are not defined in a statute must be given their plain and ordinary meanings, and it is appropriate to consult a dictionary for definitions. *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004).

Because the statute does not define the term "public ground," it is appropriate to examine dictionary definitions. *Id.* However, the term "public" has multiple definitions and is susceptible to different meanings. *Random House Webster's College Dictionary* (1997) indicates that the term "public" is susceptible to more than one meaning and defines "public" to include: "3. open to all persons . . . . 5. maintained at the public expense and under public control . . . . 7. familiar to the public; prominent . . . . 8. open to the view of all; existing or conducted in public."

Because the phrase "public ground" is ambiguous, judicial interpretation is warranted. *Linsell v Applied Handling, Inc*, 266 Mich App 1, 15, 20; 697 NW2d 913

(2005). This Court must consider the object of the statute and the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose. *Oberlies v Searchmont Resort, Inc,* 246 Mich App 424, 429-430; 633 NW2d 408 (2001). In doing so, this Court may consider a variety of factors and apply principles of statutory construction, but should also always use common sense. *Marquis v Hartford Accident & Indemnity (After Remand),* 444 Mich 638, 644; 513 NW2d 799 (1994).

Here, plaintiff relies heavily on the doctrines of *ejusdem generis* and *noscitur a sociis* to argue that "public ground," when read in context, is intended to mean only properties similar to those specifically listed in the statute, i.e., highways, streets, and alleys, and thus, "public ground" can mean only a "public right-of-way." The doctrine of *ejusdem generis* provides that, if a law contains general words and an enumeration of particular subjects, those general words are presumed to include only things of the same kind, class, character, or nature as the subjects enumerated. *Sands Appliance Services, Inc v Wilson,* 463 Mich 231, 242; 615 NW2d 241 (2000). The doctrine of *noscitur a sociis* provides that words or phrases should be given meaning by their context or setting. *Griffith v State Farm Mut Automobile Ins Co,* 472 Mich 521, 533; 697 NW2d 895 (2005).

In *Cascade,* the defendant raised precisely the same argument. This Court rejected the argument after reviewing the legislative history of MCL 600.5821(2) and other legislative uses of the phrase "public ground" as well as cases referring to "public ground" in other contexts. *Cascade* is an unpublished opinion and, therefore, is not binding under the rule of stare decisis. MCR 7.215(C)(1); *Dyball v Lennox,* 260 Mich App 698, 705 n 1; 680 NW2d 522 (2004). However, because we find its

analysis persuasive and dispositive of this matter, we agree with, and adopt as our own, the following analysis in *Cascade*:

> Under the common law, a party cannot claim ownership of state property by adverse possession. *Gorte v Dep't of Transportation*, 202 Mich App 161, 166; 507 NW2d 797 (1993). Michigan, however, long ago allowed adverse possession claims by imposing on the state a twenty-year limitations period for recovery of property. See 1897 CL 9724. Municipally owned roads were subject to adverse possession claims under this state's common law and were not exempted by statute. *Rindone v Corey Community Church*, 335 Mich 311, 316; 55 NW2d 844 (1952); *Pastorino v Detroit*, 182 Mich 5, 10; 148 NW 231 (1914); *Hill v Houghton Twp*, 109 Mich App 614, 616-617; 311 NW2d 429 (1981).
>
> In 1907, the Legislature enacted a provision stating that adverse possession did not apply against "the public" regarding "any public highway, street or alley, or of any public grounds, or any part or portion thereof, in any township, village or city in this State." 1907 PA 46. This statute used language very similar to that found in the current MCL 600.5821(2), except it did not limit claims by only municipalities but rather "the public" in general. Eight years later, the Legislature changed the law significantly. The exception still existed in essentially the same form, but was applicable only to municipalities, and a separate provision expressly stated that a fifteen-year limitations period applied to all state property, thus making it clearly susceptible to adverse possession claims. See 1915 PA 314. The same provisions continued to exist for many years, although they were occasionally moved to different statutes as the Legislature reorganized the laws. See 1929 CL 13964(3); 1929 CL 13974; 1948 CL 609.1(3); 1948 CL 609.11. The only modification was that the municipality provision's punctuation was changed to its current form; the "s" was removed from "public grounds." 1961 PA 236.
>
> What is clear from the legislative history is that, from 1915 to 1988, the Legislature gave municipalities and the

state different protection from claims of adverse posses-
sion. In 1988, the Legislature enacted the current provi-
sions found in MCL 600.5821(1) and (2). See 1988 PA 35;
*Gorte, supra* at 166-167. The municipality exception was
not altered, but "any land" owned by the state was no
longer subject to the limitations period, eliminating claims
of adverse possession. See *id.* The legislative analysis noted
that the state had too much property to monitor and the
public cost was too great when property was lost by adverse
possession. Senate Legislative Analysis, SB 375, October
29, 1987. The analysis did not address whether the Legis-
lature intended to make state protection comparable to or
greater than municipality protection. While the "any land"
language in MCL 600.5821(1) could be interpreted as
broader in scope than "public ground" as used in MCL
600.5821(2), the language difference could also simply
reflect the general changes in language between 1907 and
1988.

The phrase "public ground" or "public grounds" has
also been used frequently in statutes. It is often found in
lists next to specifically named transportation conduits,
such as highways and streets, as in this case. See, e.g., MCL
67.7; MCL 67.13; MCL 67.14; MCL 67.15; MCL 102.1. The
term is also repeatedly contained in lists specifically refer-
encing parks and playgrounds. See, e.g., MCL 67.4; MCL
100.1; MCL 100.3; MCL 125.51; MCL 125.52. And the
phrase is used in statutes that specifically mention streets
and alleys as well as parks. MCL 71.12; MCL 73.1; MCL
87.22; MCL 105.1; MCL 117.4e; MCL 125.51 *et seq.*; MCL
286.221. . . .

Notably, MCL 67.36 refers to docks and wharves being
on either "public grounds" or "the property of private
individuals," suggesting that "public grounds" simply
means public property. This broad definition is supported
by the phrase's usage in MCL 125.51 *et seq.* MCL 125.52
authorizes a municipality to adopt a plat certified by it so
long as notice is given to the land-owners "located within or
abutting on the new lines of such proposed streets, ways,
places, parks, playgrounds *or other public grounds* or
extensions thereof designated on the plat." Emphasis

added. And the phrase is also used broadly in MCL 286.221, which states that a "municipality, park board, or other board or person in control of public grounds" may apply to the commissioner of agriculture for an inspection of any portion of the public grounds.

An examination of past applications of the municipality exception fails to clarify the proper scope of "public ground" as used in MCL 600.5821(2), as it appears that no case has directly addressed the issue. But we do find that a review of cases referring to the phrase in other contexts is helpful to gain insight as to its meaning. In *Patrick v Young Men's Christian Ass'n of Kalamazoo*, 120 Mich 185, 191-192; 79 NW2d 208 (1899), our Supreme Court discussed the phrase "public ground" in a statute regarding dedication of public property, explaining that the phrase was ordinarily defined as "ground in which the public has common use."

In *Grand Haven Twp v City of Grand Haven*, 33 Mich App 634, 641; 190 NW2d 714 (1971), this Court noted that one of the ordinary definitions of "park" included "any piece of public ground, generally in or near a large town, laid out and cultivated for the sole purpose of pleasure or recreation." And in *Baldwin Manor, Inc v Birmingham*, 341 Mich 423, 430; 67 NW2d 812 (1954), our Supreme Court noted that a dedication of land as "public grounds" was "an unrestricted dedication permitting any public use," thus suggesting that the term is extremely broad. Additionally, the Court has described a fountain as being "on public grounds and in [the city's] most beautiful park," *Hosmer v Detroit*, 175 Mich 267, 271; 141 NW 657 (1913), and also indirectly labeled as "public grounds" a property it called "Voigt Park" in *Newberry v Detroit*, 164 Mich 410, 411, 413; 129 NW 699 (1911). We believe that these decisions most likely reflect the meaning of the phrase "public ground" as the Legislature intended. It is a broadly construed term used to refer to publicly owned property open to the public for common use.

Therefore, we hold that in the context of MCL 600.5821(2), which refers to "any public highway, street, alley, *or any other public ground*," the Legislature intended

the phrase to be inclusive. Accordingly, we find that the property at issue in this case is "public ground" and MCL 600.5821(2) operates to protect plaintiff from claims of adverse possession. [*Cascade, supra,* slip op at 3-5 (emphasis in original).]

We adopt the holding of *Cascade* that the phrase "public ground" is "a broadly construed term used to refer to publicly owned property open to the public for common use" and that the Legislature intended this phrase to be "inclusive." We reject plaintiff's claim that the holding of *Cascade* should be limited to the facts of *Cascade,* in which the disputed property was a recreational park. Plaintiff failed to support its assertion with appropriate argument or authority. *Wilson v Taylor,* 457 Mich 232, 243; 577 NW2d 100 (1998). Given the intent of the Legislature to broadly construe the phrase "public ground" to protect municipalities from adverse possession claims, it is logical that the protection covers an area so obviously open and accessible to the public as the property in this case.

III

In sum, we conclude that the trial court did not err in determining that the property is "public ground" within the meaning of MCL 600.5821(2), and that it did not err in granting defendant summary disposition on the basis that plaintiff cannot institute an adverse possession claim pursuant to MCL 600.5821(2).

Affirmed.